UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCO POLO, INC., <br> Plaintiff, <br> v. <br> ROBERT FOSTER, <br> Defendant. | Case No.: 17-cv-1935-WQH-BLM <br><br> **ORDER** |

HAYES, Judge:

The matter before the Court is the Motion to Dismiss (ECF No. 12) filed by Defendant Robert Foster.

**I.     Background**

On September 22, 2017, Plaintiff Marco Polo, Inc. ("MPI") initiated this action by filing the Complaint (ECF No. 1). The Complaint brings claims for breach of fiduciary duty, breach of contract, and conversion. Compl. at 1. On November 27, 2017, Defendant Robert Foster filed the Motion to Dismiss (ECF No. 12) and a Memorandum of Points and Authorities in Support of Motion to Dismiss (ECF No. 13). Foster attached the Declaration of Robert Foster (ECF No. 12-1) to the Motion to Dismiss (ECF No. 12). On December 19, 2017, MPI filed an Opposition to Defendant Robert Foster's Motion to Dismiss. (ECF No. 15). On December 26, 2017, Foster filed a Reply in Support of Motion to Dismiss. (ECF No. 16).

## II. Allegations of the Complaint

"Marco Polo serves a wealthy and prominent philanthropist and businessman [(]'Prominent Individual.'[)]" Compl. at ¶ 9. "Marco Polo interviews, hires, pays and generally oversees employees who service Prominent Individual's estate and help in his and his family's day to day affairs." *Id.*

"Foster was formerly employed by Marco Polo." *Id.* at ¶ 4. "Foster was hired, paid, and trusted[] to ethically work for Marco Polo and for the benefit of . . . Prominent Individual, as well as a family member of Prominent Individual." Compl. at ¶ 18. "[A]s a condition of his employment with Marco Polo, . . . Foster executed the Confidentiality Agreement." Compl. at ¶ 11. Under the terms of the Confidentiality Agreement, Foster agreed that he would not "disclose" or "otherwise use or exploit any information concerning [Prominent Individual] and/or MPI" "except as required by [his] relationship with [Prominent Individual] and/or MPI or expressly consented to in advance in writing by [Prominent Individual] or a duly authorized representative of [Prominent Individual]." (ECF No. 1 at 12). "Foster has now threatened to . . . dispel[] both confidential information and untold falsities and secrets about Prominent Individual and his family." Compl. at ¶ 12. "Foster has already disclosed certain confidential information regarding Prominent Individual to one or more third parties." *Id.* at ¶ 24. "Foster acted with full knowledge and with reckless disregard for the consequences and damages being caused by his actions, both to Marco Polo and Prominent Individual." *Id.* at ¶ 19.

"During his employment with Marco Polo, Foster had access to a company credit card and/or petty cash (collectively 'Corporate Funds')." Compl. at ¶ 14. "Foster was entrusted with and authorized to use Corporate Funds exclusively for the benefit of Marco Polo." *Id.* "Foster extensively used Corporate Funds for personal and/or non-business related purchases, without permission from Marco Polo or an authorized agent of Marco Polo . . . ." *Id.* at ¶ 15. "Foster used Corporate Funds to [sic] for personal and/or non-business related gifts, meals, gas, entertainment, alcohol, Christmas shopping, various memberships, and pawn shop purchases, to name a few." *Id.*

### III. Facts

MPI is a California corporation with its principal place of business in San Diego, California. Declaration of Diane Fisher, ECF No. 15-2, at ¶¶ 11, 14.[1] MPI hired Foster in September 2010. Fisher Decl. at ¶ 4. Foster executed the Confidentiality Agreement in San Diego, California on October 6, 2010. (ECF No. 1 at 14). The Confidentiality Agreement provided that, "[a]s part of the consideration for undertaking [an employment] relationship and being compensated by MPI, [Foster] agree[d]" not to "disclose, publish, or make available any 'INFORMATION' concerning [Prominent Individual] and/or MPI" *Id.* at 12. The Confidentiality Agreement stated that MPI was a California corporation. *Id.* The Confidentiality Agreement stated that it "shall be governed by the laws of California." *Id.* at 13.

"Foster worked predominantly in California from the time he was hired by MPI until 2012, when he was tasked with overseeing a project in Hawaii." Declaration of Wilfred Davis, ECF No. 15-1, at ¶ 5; Fisher Decl. at ¶ 10; *see also* Foster Decl. at ¶¶ 11, 15. From 2012 through 2017, Foster consistently traveled to California for business purposes. *See* Davis Decl. at ¶ 5 (From 2012 through 2017, "Foster traveled from Hawaii to California four to six times per year, and on average would stay in California for approximately two weeks each time he made the trip."); Foster Decl. at ¶¶ 27–28 ("I would also fly to San Diego, California to provide company and protection for the owner of Marco Polo during the many trips that he took outside California. During these assignments, I would meet the owner of Marco Polo in California and then we would travel mostly outside of California.").

"The company card that Mr. Foster utilized during his employment was paid by MPI from its corporate office in San Diego, California." Fisher Decl. at ¶ 14.

---

[1] Foster contends that MPI's "CEO (and therefore principal place of business) was in Hawaii," (ECF No. 16 at 10) but does not present any evidence in support of that contention, *see* Foster Decl.; Second Foster Declaration (ECF No. 16-1).

3

17-cv-1935-WQH-BLM

## IV. Motion to Dismiss for Lack of Jurisdiction

Foster moves to dismiss the Complaint on the grounds that the Court does not have personal jurisdiction over Foster. (ECF No. 13 at 8–16). MPI contends that the Court does have personal jurisdiction over Foster. (ECF No. 15 at 9–17).

### A. Standard of Review

"In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Where, as here, the parties have submitted declarations and exhibits in support of their motion and opposition; *see* attachments to ECF Nos. 12, 15, and 16; the Court considers both the allegations in the plaintiff's complaint and the factual material submitted. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). The Court accepts as true all uncontroverted allegations in the plaintiff's complaint and "draw[s] reasonable inferences from the complaint in favor of the plaintiff." *Fiore v. Walden*, 688 F.3d 558, 574–75 (9th Cir. 2012), *rev'd on other grounds*, 134 S. Ct. 1115 (2014). However, the Court does not accept as true allegations that are contradicted by factual material submitted by the parties. *Mavrix*, 647 F.3d at 1223 (*quoting Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977)).

### B. Discussion

"Where, as here, no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the court sits." *Mavrix*, 647 F.3d at 1223. The California statute that authorizes courts to exercise personal jurisdiction over residents of other states "is coextensive with federal due process requirements, so the jurisdictional analyses under state law and federal due process are the same." *Id.*

*Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement* established that a state may exercise jurisdiction over a defendant without violating due process if the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U.S. 310, 316 (1945).

> *International Shoe*'s conception of "fair play and substantial justice" presaged the development of two categories of personal jurisdiction. The first category is represented by *International Shoe* itself, a case in which the in-state activities of the corporate defendant . . . gave rise to the liabilities sued on. . . . Adjudicatory authority of this order, in which the suit arises out of or relates to the defendant's contacts with the forum, is today called specific jurisdiction.

*Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (citations and quotations omitted).

> *International Shoe* distinguished between, on the one hand, exercises of specific jurisdiction, as just described, and on the other, situations where a foreign corporation's continuous corporate operations within a state are so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities. . . . [A] a court may assert general jurisdiction over foreign . . . corporations to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State.

*Id.* (citations and quotations omitted). MPI does not contend that the Court has general jurisdiction over Foster. *See* ECF No. 15.

The Court of Appeals has established three requirements that must be met for a court to have specific jurisdiction over a non-resident defendant. First, "The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). Purposeful "availment and direction are, in fact, two distinct concepts. A purposeful availment analysis is most often used in suits sounding in contract. A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." *Id*. (citations omitted). The second requirement is that "the claim must be one which arises out of or relates to the defendant's forum-related activities." *Id.* at 802 (quoting *Lake*, 817 F.2d at 1421). The final requirement is that "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Id.* (quoting Lake, 817 F.2d at 1421).

### 1. Purposeful Availment

Foster contends that "there has been no purposeful availment by Defendant" because "[o]ther than his activities with Plaintiff, Defendant has no other meaningful connections or contacts with California." (ECF No. 13 at 13–14). MPI contends that the evidence before the Court establishes that "[t]he purposeful availment test is . . . easily satisfied in this case." (ECF No. 15 at 12).

"To be subject to specific jurisdiction, a defendant must have 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "[T]he 'purposeful availment' requirement is satisfied if the defendant has taken deliberate action within the forum state or if he has created continuing obligations to forum residents." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995) (citing *Hirsch v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474, 1478 (9th Cir. 1986)). "A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). "[T]he mere existence of a contract with a party in the forum state does not constitute sufficient minimum contacts for jurisdiction"; courts must consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Sher*, 911 F.2d at 1362 (quoting *Burger King*, 471 U.S. at 479)

Foster correctly contends that purposeful availment analysis examines the "contacts that the 'defendant himself' creates with the forum State," not "contacts between the plaintiff (or third parties) and the forum State." ECF No. 13 at 9 (quoting *Burger King*, 471 U.S. at 475). However, Foster incorrectly relies on this rule to contend that "his activities with Plaintiff . . . cannot be the basis for personal jurisdiction for purposeful availment purposes." *Id.* at 14. Courts consider a defendant's contacts with the forum state

even if they occur within the context of the defendant's relationship with the plaintiff.  *See Sher*, 911 F.2d at 1362 (quoting *Burger King*, 471 U.S. at 479) (Courts "must look to 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' to determine if the defendant's contacts are 'substantial.'").

MPI hired Foster in September 2010.  Fisher Decl. at ¶ 4.  Foster executed the Confidentiality Agreement in San Diego, California on October 6, 2010.  (ECF No. 1 at 14).  The Confidentiality Agreement provided that, "[a]s part of the consideration for undertaking [an employment] relationship and being compensated by MPI, [Foster] agree[d]" not to "disclose, publish, or make available any 'INFORMATION' concerning [Prominent Individual] and/or MPI."  *Id.* at 12.  The Confidentiality Agreement informed Foster that MPI was a California corporation.  *Id.*  The Confidentiality Agreement stated that it "shall be governed by the laws of California."  *Id.* at 13.

"Foster worked predominantly in California from the time he was hired by MPI until 2012."  Davis Decl. at ¶ 5; *see also* Foster Decl. at ¶¶ 11, 15.  From 2012 through 2017, Foster consistently traveled to California for business purposes.  *See* Davis Decl. at ¶ 5 (From 2012 through 2017, "Foster traveled from Hawaii to California four to six times per year, and on average would stay in California for approximately two weeks each time he made the trip."); Foster Decl. at ¶¶ 27–28 ("I would also fly to San Diego, California to provide company and protection for the owner of Marco Polo during the many trips that he took outside California.  During these assignments, I would meet the owner of Marco Polo in California and then we would travel mostly outside of California.").

The Court finds that the evidence in the record demonstrates that Foster "has taken deliberate action within [California and] has created continuing obligations to [California] residents."  *Ballard*, 65 F.3d at 1498 (citing *Hirsch*, 800 F.2d at 1478).  By doing so, Foster "ha[s] 'purposefully avail[ed] [him]self of the privilege of conducting activities within [California], thus invoking the benefits and protections of its laws.'"  *Sher*, 911 F.2d at 1362 (quoting *Burger King*, 471 U.S. at 475).

## 2. Purposeful Direction

Foster contends that he has not purposefully directed his activities at California because he committed "no intentional act aimed at . . . California." (ECF No. 13 at 14). MPI contends that the purchases that Foster allegedly made using corporate funds were intentional acts expressly aimed at California. (ECF No. 15 at 13).

A defendant has purposefully directed his activities toward a state if the defendant has "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 805 (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)). "[T]he [express aiming] requirement is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Bancroft*, 223 F.3d at 1087.

The Complaint alleges that Foster "used Corporate Funds for personal and/or non-business related purchases, without permission from Marco Polo or an authorized agent of Marco Polo." Compl. at ¶ 15. The Complaint alleges that Foster committed intentional acts: making purchases with MPI funds that were unrelated to MPI's business. Those alleged acts were targeted at MPI. Foster knew MPI was a resident of California. *See* ECF No. 1 at 12. Accordingly, Foster's alleged intentional acts were expressly aimed at California and allegedly caused harm that Foster knew was likely to be suffered in California. Foster purposefully directed his alleged tortious acts toward California.

## 3. Relation to Forum-Related Activities

MPI contends that "all of MPI's causes of action arise out of or relate to Defendant's forum-related activities." (ECF No. 15 at 14). Foster does not dispute this contention. A cause of action arises out of or relates to a defendant's forum-related activities if the plaintiff would not have suffered its alleged injuries but for the defendant's forum-related activities. *Bancroft*, 223 F.3d at 1088 (citing *Ziegler v. Indian River County*, 64 F.3d 470, 474 (9th Cir. 1995)). MPI's claims for breach of contract and breach of fiduciary duty arise out of Foster's conduct in California: but for Foster signing the

8

Confidentiality Agreement and other agreements with MPI, which he did in California, Foster could not have breached the Confidentiality Agreement or his alleged fiduciary duties to MPI. *See* ECF No. 1 at 14. MPI's claim for conversion arises out of Foster's conduct purposefully directed at California, specifically Foster's alleged uses of MPI funds for purchases unrelated to MPI's business.

### 4. Reasonableness

Foster contends that it would be unreasonable for the Court to exercise personal jurisdiction over Foster because (1) "Defendant has not purposely interjected himself into the forum state," (2) "it would be a tremendous burden to force Defendant to litigate this case in California[] since he lives in Hawaii, is unemployed and has limited means," (3) "the majority of the witnesses live in Hawaii," (4) "the acts complained of by Plaintiff occurred in Hawaii," and (5) "Hawaii is a more appropriate forum." (ECF No. 13 at 15–16). MPI contends that Foster has not presented a compelling case that it would be unreasonable for the Court to exercise jurisdiction because (1) Foster's "contacts with California were extensive," (2) Foster has not presented evidence showing that litigating in California would be a tremendous burden, and (3) Foster's contention that the majority of witnesses live in Hawaii "is contradicted by Defendant's own declaration." (ECF No. 15 at 16–17).

Courts "presume that an otherwise valid exercise of specific jurisdiction is reasonable." *Ballard*, 65 F.3d at 1500 (citing *Sher*, 911 F.2d at 1364). The burden is on the plaintiff to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477. To determine whether an exercise of specific jurisdiction is reasonable, courts consider a number of factors including

> (1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the

9

17-cv-1935-WQH-BLM

controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998), *overruled on other grounds by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006) (citing *Burger King*, 471 U.S. at 476–77).

Foster has purposefully interjected himself into California in a number of ways. Foster accepted a position with a company that he knew was a California corporation. Fisher Decl. at ¶ 4; ECF No. 1 at 12. Foster executed the Confidentiality Agreement in California knowing that it was governed by California law. (ECF No. 1 at 13–14). Foster worked in California from 2010 to 2012, and from 2012 to 2017 he consistently travelled to California for business purposes. Foster Decl. at ¶¶ 11, 15, 27–28.

Foster has not established that litigating this case in California would be an unreasonable burden on him. While Foster contends that he "is unemployed and has limited means," (ECF No. 13 at 15), he has not presented any evidence to that effect, *see* Foster Decl.; Second Foster Decl.

Accordingly, the Court finds that Foster has failed to present a compelling case that it would be unreasonable for the Court to exercise personal jurisdiction over him.

### 5. Conclusion

Foster has purposefully directed activities toward California and purposefully availed himself of the privilege of conducting activities in California. *See supra* Sections IV.B.1 and IV.B.2. MPI's claims arise out Foster's California-related activities. *See supra* Section IV.B.3. Foster has not presented a compelling case that it would be unreasonable for the Court to exercise personal jurisdiction over him. *See supra* Section IV.B.4. Accordingly, the Court has specific personal jurisdiction over Foster. *See Schwarzenegger*, 374 F.3d at 802 (quoting *Lake*, 817 F.2d at 1421).

## V. Motion to Dismiss for Improper Venue

Foster contends that the Court should dismiss this case or transfer it to the District of Hawaii for "the convenience of the parties, the convenience of the witnesses, and the

interest of justice." ECF No. 13 at 16 (numbering omitted). MPI contends that venue is proper in this Court "because a substantial part of the events or omissions giving rise to the claim occurred in San Diego." (ECF No. 15 at 18).

Federal Rule of Civil Procedure 12(b)(3) "states that a party may move to dismiss a case for 'improper venue.'" *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 134 (2013) (quoting Fed. R. Civ. P. 12(b)(3)). Once venue is challenged, the plaintiff has the burden of showing that the current venue is proper. *Piedmont Label Co. v. Sun Garden Packing Co*., 598 F.2d 491, 496 (9th Cir. 1979). When analyzing a motion to dismiss under Rule 12(b)(3), courts need not accept all allegations as true and may consider facts outside of the pleadings. *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996).

"[W]hether venue is 'wrong' or 'improper'[ ]is generally governed by 28 U.S.C. § 1391." *Id.* Under § 1391, venue is proper in three categories of districts. *See* 28 U.S.C. § 1391(b). One category includes "judicial district[s] in which a substantial part of the events or omissions giving rise to the claim occurred." *Id.* at § 1391(b)(2).

> The "substantiality" requirement of § 1391(a)(2) "is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute." *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3rd Cir. 1994). A "substantial part of the events or omissions" does not mean, however, that the events in that district predominate or that the chosen district is the "best venue." *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 563 (8th Cir. 2003); *First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 264 (6th Cir. 1998); *see also Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004) (noting that "it is possible for venue to be proper in more than one judicial district"). "Only the events that directly give rise to a claim are relevant. And of the places where the events have taken place, only those locations hosting a 'substantial part' of the events are to be considered." *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003); *Silver Valley Partners L.L.C. v. De Motte*, 400 F. Supp. 2d 1262, 1269 (W. D. Wash 2005) (same).

*Duarte v. California Hotel & Casino*, 2009 WL 4668739, at *2 (D. Haw. Dec. 4, 2009).

Foster executed the Confidentiality Agreement in San Diego. (ECF No. 1 at 13–14). MPI is a California corporation with its principal place of business in San Diego, so the

effects of any injuries that MPI sustained as a result of Foster's alleged breaches were felt in San Diego. *See* Fisher Decl. at ¶¶ 11, 14. The Court finds that these acts form a substantial part of the events or omissions giving rise to MPI's claims for breach of contract and breach of fiduciary duty. *See Renteria v. Ramanlal*, No. CV-07-00658-PHX-ROS, 2009 WL 73675, at *6 (D. Ariz. Jan. 9, 2009) (finding that, "[w]hile it may indeed be correct to say that Hawai'i was the district where the most significant events or omissions occurred," venue was proper in Arizona because "[Plaintiff] was resident in Arizona at all times relevant to the case, including when he negotiated and executed the agreement at issue," "[Plaintiff's company was] headquartered in Arizona," "any financial injury suffered by Plaintiffs was suffered in Arizona where their business and finances are located," and "Defendants were well aware that they were entering into business deals with parties centered in Arizona"); *ESI, Inc. v. Coastal Power Prod. Co.*, 995 F. Supp. 419, 425 (S.D.N.Y. 1998) ("Venue may be proper in the district where the contract was substantially negotiated, drafted, and/or executed, even if the contract was not to be performed in that district and the alleged breach occurred elsewhere."). Consequently, the Southern District of California is a proper venue for MPI's claims for breach of contract and breach of fiduciary duty. *See Atl. Marine*, 571 U.S. at 134.

Certain events relating to MPI's claim for conversion also occurred in California. Foster made some of the purchases that allegedly amounted to conversion in California. Fisher Decl. at ¶ 13; Foster Decl. at ¶ 20. MPI paid the credit card that Foster used to make some of the purchases that allegedly amounted to conversion from its corporate office in San Diego. Fisher Decl. at ¶ 14. MPI is a California corporation with its principal place of business in San Diego, so the effects of any injuries that MPI sustained as a result of Foster's alleged conversions were felt in San Diego. *See* Fisher Decl. at ¶¶ 11, 14. The Court finds that these acts form a substantial part of the events or omissions giving rise to MPI's claim for conversion. *See CBC Framing, Inc. v. Flores*, No. CV0800150MMMJCX, 2008 WL 11337545, at *5 (C.D. Cal. May 19, 2008) ("Because CBC has shown that a substantial part of the events giving rise to the claim occurred in Central District—by virtue

12

17-cv-1935-WQH-BLM

of the fact that it is the district where it was injured by defendants' alleged activities—the court concludes that venue is proper despite the fact that defendants may have greater contacts with [other districts]."). The Southern District of California is a proper venue.

## VI. Motion to Dismiss for Failure to State a Claim

Foster moves to dismiss MPI's claims for failure to state a claim. (ECF No. 13 at 17–24). MPI contends that the Complaint adequately states claims for breach of contract, breach of fiduciary duty, and conversion. (ECF No. 15 at 19–22).

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a)(2) provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 570). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679.

### B. Contract-Based Claims

Foster contends that "the factual explanation [of MPI's claims for breach of contract and breach of fiduciary duty] as laid out in the Complaint is too thin to be plausible [because] there are no facts as to what exactly was said, when it was said . . . , [and in what] the circumstances." (ECF No. 13 at 22). Foster contends that all MPI has provided "are legal conclusions based on a very thin factual context." *Id.*[2] MPI contends that the Complaint states claims for breach of contract and breach of fiduciary duty. *Id.* at 19–22.

#### 1. Breach of Contract

To state a claim for breach of contract, a plaintiff must allege "(1) the contract, (2) the plaintiff's performance of the contract or excuse for nonperformance, (3) the defendant's breach, and (4) the resulting damage to the plaintiff." *Richman v. Hartley*, 169 Cal. Rptr. 3d 475, 478 (Cal. Ct. App. 2014) (citing *Careau & Co. v. Sec. Pac. Bus. Credit, Inc,.* 272 Cal. Rptr. 387, 395 (Cal. Ct. App. 1990), *as modified on denial of reh'g* (Oct. 31, 2001)).

MPI alleges that "as a condition of his employment with Marco Polo, and as a condition to living rent-free on a palatial estate in Hawaii while overseeing the residence, Foster executed the Confidentiality Agreement." Compl. at ¶ 11. Under the terms of the Confidentiality Agreement, Foster agreed that he would not "disclose" or "otherwise use or exploit any information concerning [Prominent Individual] and/or MPI" "except as required by [his] relationship with [Prominent Individual] and/or MPI or expressly consented to in advance in writing by [Prominent Individual] or a duly authorized

---

[2] Foster also contends that MPI's claims for breach of contract and breach of fiduciary duty should be dismissed because the Confidentiality Agreement is unenforceable. (ECF No. 13 at 21). Foster contends that the Confidentiality Agreement is unenforceable because "Plaintiff is attempting to suppress Defendant's ability to obtain discovery and evidence he needs to prevail on his whistleblowing retaliation claim." *Id*. The Complaint does not discuss any claims filed by Foster. *See* Compl. Foster's contention that the Confidentiality Agreement is unenforceable therefore asks the Court to consider material outside of the pleadings. The Court cannot consider material outside of the pleadings when reviewing Foster's Motion to Dismiss. *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). Consequently, at this stage of the proceedings, the Court does not find that the Confidentiality Agreement is unenforceable.

representative of [Prominent Individual]." (ECF No. 1 at 12). MPI alleges that "Foster has now threatened to breach exactly those contractual obligations by dispelling both confidential information and untold falsities and secrets about Prominent Individual and his family." Compl. at ¶ 12. MPI alleges that "[b]y merely having to pursue this legal remedy and to address Foster's threatened actions, Marco Polo has suffered injuries, and will suffer far more severe injuries if and when Foster follows through on his threatened actions in breach of the Confidentiality Agreement." *Id.* at ¶ 23. MPI further alleges that "Foster has already disclosed certain confidential information regarding Prominent Individual to one or more third parties." *Id.* at ¶ 24.

The Court finds that Foster is not entitled to a dismissal of MPI's breach of contract claim even though MPI does not provide specific detail concerning Foster's alleged threats and disclosures. *See Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

### 2. Breach of Fiduciary Duty

"To establish a cause of action for breach of fiduciary duty, a plaintiff must demonstrate the existence of a fiduciary relationship, breach of that duty and damages." *Shopoff & Cavallo LLP v. Hyon*, 85 Cal. Rptr. 3d 268, 285 (Cal. Ct. App. 2008) (citing *Charnay v. Cobert*, 51 Cal. Rptr. 3d 471, 480 (Cal. Ct. App. 2006)).

MPI alleges that "Foster was hired, paid, and trusted[] to ethically work for Marco Polo and for the benefit of what was effectively Marco Polo's client, Prominent Individual, as well as a family member of Prominent Individual." Compl. at ¶ 18. MPI alleges that "Foster has now threatened to . . . dispel[] both confidential information and untold falsities and secrets about Prominent Individual and his family." *Id.* at ¶ 12. MPI alleges that "[b]y merely having to pursue this legal remedy and to address Foster's threatened actions, Marco Polo has suffered injuries, and will suffer far more severe injuries if and when Foster follows through on his threatened actions in breach of the Confidentiality Agreement." *Id.* at ¶ 23. MPI further alleges that "Foster has already disclosed certain confidential

information regarding Prominent Individual to one or more third parties." *Id.* at ¶ 24. MPI alleges that "Foster acted with full knowledge and with reckless disregard for the consequences and damages being caused by his actions, both to Marco Polo and Prominent Individual." *Id.* at ¶ 19.

Foster is not entitled to a dismissal of MPI's breach of fiduciary duty claim even though MPI does not provide specific details concerning Foster's alleged threats and disclosures. *See Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

### C. Conversion

Foster contends that MPI has failed to state a claim for conversion because MPI does not allege that Plaintiff converted "a sum certain." (ECF No. 13 at 23–24). Foster also contends that MPI has failed to state a claim for conversion because the Complaint "fails to give specific information as to what charges [Foster made on the credit card issued by MPI], when those charges were made . . . and at what stores, businesses or vendors." *Id.* at 24. MPI contends that "California courts generally permit actions for conversion where a readily ascertainable sum has been misappropriated" and that the allegations in the Complaint "plausibly state a claim for conversion." ECF No. 15 at 22 (citing *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro*, 150 Cal. App. 4th 384, 396 (Cal. Ct. App. 2007)).

"The elements of a conversion cause of action are (1) plaintiffs' ownership or right to possession of the property at the time of the conversion; (2) defendants' conversion by a wrongful act or disposition of plaintiffs' property rights; and (3) damages." *Graham-Sult v. Clainos*, 756 F.3d 724, 737 (9th Cir. 2014) (alteration omitted) (quoting *Hartford Fin. Corp. v. Burns*, 158 Cal. Rptr. 169, 172 (Cal. Ct. App. 1979)). "[M]oney cannot be the subject of an action for conversion unless a specific sum capable of identification is involved . . . ." *Haigler v. Donnelly*, 117 P.2d 331, 335 (Cal. 1941) (citing *Baxter v. King*, 253 P. 172, 172 (Cal. 1927)).

16

MPI alleges that "during his employment with Marco Polo, Foster had access to . . . Corporate Funds . . . . Foster was entrusted with and authorized to use Corporate Funds exclusively for the benefit of Marco Polo." Compl. at ¶ 14. MPI alleges that "Foster extensively used Corporate Funds for personal and/or non-business related purchases, without permission from Marco Polo or an authorized agent of Marco Polo." *Id.* at ¶ 15. MPI alleges that "Foster used Corporate Funds to [sic] for personal and/or non-business related gifts, meals, gas, entertainment, alcohol, Christmas shopping, various memberships, and pawn shop purchases . . . ." *Id.* The Court finds that the Complaint alleges that Foster converted an amount of MPI funds that is capable of identification. The Court finds that the Complaint states a claim for conversion. *See Price v. Synapse Grp., Inc.,* No. 16-CV-01524-BAS-BLM, 2017 WL 3131700, at *9 (S.D. Cal. July 24, 2017) (citing *In re Easysaver Rewards Litig.*, 737 F. Supp. 2d 1159, 1180 (S.D. Cal. 2010); *Welco Elecs., Inc. v. Mora*, 166 Cal. Rptr. 3d 877, 882–87 (Cal. Ct. App. 2014)) ("Plaintiffs allege . . . damages in the form of charges to their credit cards [and] that the amount of money wrongfully taken is capable of identification. These allegations are sufficient to state a conversion claim." (citations omitted)).

## VII. Conclusion

The Motion to Dismiss (ECF No. 12) filed by Defendant Robert Foster is DENIED.

Dated: March 22, 2018

*William Q. Hayes*
Hon. William Q. Hayes
United States District Court